# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE CITY OF HAVERHILL RETIREMENT SYSTEM, Derivatively on Behalf of Nominal Defendant GREAT LAKES DREDGE & DOCK CORPORATION, | Case No.: |
| Plaintiff, | |
| v. | COMPLAINT FOR BREACH OF FIDUCIARY DUTY |
| NATHAN D. LEIGHT, DOUGLAS MACKIE, CARL A. ALBERT, JOHNATHAN W. BERGER, PETER R. DEUTSCH, JASON G. WEISS, STEPHEN H. BITTEL, | JURY TRIAL DEMANDED |
| Defendants, | |
| and | |
| GREAT LAKES DREDGE & DOCK CORPORATION, | |
| Nominal Defendants. | |

Plaintiff City of Haverhill Retirement System, on behalf of Great Lakes Dredge & Dock Corporation ("Great Lakes" or the "Company"), derivatively, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief and investigation of counsel as to all other matters. That investigation included, among other things, a thorough review and analysis of public documents, United States Securities and Exchange Commission ("SEC") filings, court filings, press releases and news articles concerning Great Lakes, and the other facts as set forth herein:

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought on behalf of and for the benefit of Great Lakes, against certain of its officers and/or directors named as defendants herein, seeking to remedy their breaches of fiduciary duties. Defendants' actions have caused, and will continue to cause, substantial financial harm and reputational damage to Great Lakes.

2.     Great Lakes is a leading provider of dredging services in the United States and provides both commercial and industrial demolition as well as remediation services. As set forth herein, Defendants breached their fiduciary duties owed to shareholders by causing the Company to make false and misleading statements and by failing to disclose that the Company was improperly recognizing revenue in a manner inconsistent with its accounting policy. The Defendants similarly breached their fiduciary duties by causing the Company to make false statements concerning its internal controls and by failing to establish internal controls, and causing the Company to false and misleading financial statements.

3.     On March 14, 2013, the Company issued a press release announcing that it would be restating its financial statements for the Second and Third Quarters of 2013 and that such financial statements should no longer be relied upon. The Company further stated that it expected to

1

conclude that a material weakness exists over its financial reporting and that it would not be able to timely file its 2012 annual financial results with the Securities and Exchange Commission.

4.      The basis for the Company's restatement and inability to timely file financial results was that the Company had not recognized revenue in a manner consistent with its accounting policy. Specifically, certain pending change orders where client acceptance was not finalized were improperly included as revenue. The Company was, therefore, forced to admit that it had misstated its financial statements, and that certain revenues reported for the Second and Third Quarter were overstated by $3.9 and $4.3 million respectively.

5.      On that same day, the Company further reported that it was not in compliance with a financial covenant to its senior revolving credit facility. As a result of the non-compliance, and in lieu of placing the Company in default, the Company would now be required to secure its credit obligations by having liens placed on certain of its vessels and all of its domestic accounts receivable.

6.      Since the Company remains under the control and/or influence of the primary wrongdoers who: (1) caused the Company to make false and misleading statements concerning its financial results and internal controls; (2) caused the Company to overstate revenues in violation of GAAP; (3) failed to establish adequate internal controls to prevent such wrongdoing; (4) have substantial conflicts; and/or (5) are implicated in the commission of the wrongful conduct alleged herein, Great Lakes is unable to protect itself or remedy the wrongs inflicted upon it. Accordingly, this derivative action must be brought and vigorously prosecuted to protect and vindicate the rights of the Company and for restitution to the Company of, among other things, the costs and expenses that have and will be paid by the Company as a result of Defendants' wrongdoing.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1332(a)(2).  Plaintiff and Defendants are citizens of different states and the amount in controversy

exceeds $75,000, exclusive of interests and costs.  This action is not a collusive one to confer

jurisdiction on a court of the United States, which it would not otherwise have.

8.     The Court has personal jurisdiction over each Defendant because each Defendant has

committed acts related to the claims at issue in this Complaint within this District.

9.     Venue is proper in this Court because Nominal Defendant Great Lakes is

headquartered in this district and a number of the Individual Defendants are citizens of the State of

Illinois.   Additionally, venue is proper in this district because a substantial portion of the

transactions and wrongs complained of herein, occurred in this district.

## PARTIES

10.    Plaintiff City of Haverhill Retirement System is a resident of the state of

Massachusetts, a current Great Lakes shareholder, and a continuous holder of Great Lakes

common stock since February 2012.  Plaintiff will continue to hold Great Lakes common stock

throughout the pendency of this action.  Plaintiff will fairly and adequately represent the interests

of the shareholders in enforcing the rights of the corporation.

11.    Nominal Defendant Great Lakes is a corporation organized under the laws of the

State of Delaware.   According to its filings with the SEC, Great Lakes' principal executive

offices are located at 2122 York Road, Oak Brook, Illinois 60523.

12.    Defendant Nathan Leight ("Leight") has served as a member of the Great Lakes Board

of Directors since 2006, being appointed Chairman of the Board in March, 2011.  Leight is a

resident of Florida.  Leight serves on the Audit Committee and Compensation Committee and is the

Chairman of the Nominating and Corporate Governance Committee. Leight is the beneficial owner of 1,634,066 shares of Great Lakes stock.

13.    Defendant Douglas B. Mackie ("Mackie") has been a member of the Great Lakes Board of Directors since 1995. Mackie served as Great Lakes' President and Chief Executive Officer ("CEO") from 1995 until September 2010, and served as a consultant for the company from September 2010 until September 2011. Mackie joined Great Lakes in 1978 as Corporate Counsel and was promoted to Senior Vice President in 1987. Mackie is a resident of Florida. Mackie is a member of the Company's Nominating and Corporate Governance Committee. Mackie is the beneficial owner of 28,713 shares of Great Lakes stock.

14.    Defendant Carl A. Albert, ("Albert") has been a member of the Great Lakes Board of Directors since July 2010. Albert is a resident of California. Albert is a member of the Company's Compensation Committee and is the Chairman of the Audit Committee. Albert is the beneficial owner of 35,495 shares of Great Lakes stock.

15.    Defendant Jonathan W. Berger, ("Berger") has been a member of the Great Lakes Board of Directors since 2006. Berger is currently the Company's CEO. Berger is a resident of Illinois. Berger is the beneficial owner of 235,314 shares of Great Lakes stock.

16.    Defendant Peter R. Deutsch, ("Deutsch") has been a member of the Great Lakes Board of Directors since 2006. Deutsch is a resident of Florida. Deutsch is a member of the Audit Committee and the Nominating and Corporate Governance Committee. Deutsche is the beneficial owner of 71,366 shares of Great Lakes stock.

17.    Defendant Jason G. Weiss, ("Weiss") has been a member of the Great Lakes Board of Directors since 2006. Weiss is a resident of California. Weiss is the Chairman of the Compensation Committee. Weiss is the beneficial owner of 45,866 shares of Great Lakes stock.

18.   Defendant Stephen H. Bittel, ("Bittel") has been a member of the Great Lakes Board of Directors since 2011.   Bittel is a resident of Florida.   Bittel is a member of the Company's Audit Committee and Compensation Committee.   Bittel is the beneficial owner of 107,471 shares of Great Lakes stock.

19.   Defendants Leight, Mackie, Albert, Berger, Deutsch, Weiss, and Bittel are collectively referred to hereinafter as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

20.   Nominal Defendant Great Lakes is the largest provider of dredging services in the United States.   Great Lakes operates in two segments: dredging and demolition.   The dredging segment is involved in projects like port expansion, land reclamations, trench digging, beach nourishment projects, and similar projects.   The demolition segment provides commercial and industrial demolition services.   This segment also engages in site development, removal of asbestos and other hazardous materials, and remediation of contaminated demolition materials. Great Lakes owns the largest fleet of dredging vessels and is one of the largest demolition service providers in the United States.

21.   During the relevant period, Great Lakes, operated under the control of the Individual Defendants, Defendants breached their fiduciary duties to the Company and its shareholders by making false and misleading statements and failing to disclose that the Company had recognized revenue in a manner inconsistent with its own accounting policy.   Specifically, the Company included as revenue certain pending change orders where client acceptance had not been finalized. The Individual Defendants also breached their fiduciary duty by failing to establish adequate internal controls to detect or prevent misstatements in its financial statements.

22.     Great Lakes, operating under the control of the Individual Defendants, repeatedly make false and misleading statements and omissions regarding the Company's financial results, accounting practices, and internal controls.  These statements created the false impression that Great Lakes was meeting its target revenues, profit margin percentages, and other financial metrics.

23.     Great Lakes, along with Defendant Berger, certified the design and reliability of the Company's internal controls, and the accuracy of the Company's financial results during the relevant period.  Indeed, they specifically certified that (1) the Company presented its financial results in compliance with GAAP; (2) the Company's financial reporting did not contain any untrue statement of material fact; and (3) the financial statements fairly present its financial condition, results of operations, and cash flows.

24.     Pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 ("SOX"), Great Lakes and Defendant Berger certified that the *internal controls over financial reporting provide reasonable assurance regarding the reliability of financial reporting and that the preparation of financial statements are in accordance with generally accepted accounting principle, that its internal controls are effective, there are no material weaknesses and that the Company's auditors and its audit committee have evaluated the financial reporting for the period.*

25.     Each of these statements was, however, false and misleading due to Great Lakes' fraudulent accounting, wherein certain orders were improperly recorded as revenue even though client acceptance had not been finalized.  As a result, the Company overstated important operational metrics such as revenue during the relevant period.

26.     Moreover, the Company's internal financial controls were completely ineffective.

27. In both of the Company's Form 10-Q SEC filings during the relevant period, Defendant Berger made the following representation regarding the effectiveness of the Company's disclosure controls in substantially identical form:

From the 6/30/12 10-Q filed on August 7, 2012:

**Item 4. Controls and Procedures.**

*a) Evaluation of disclosure controls and procedures*

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures, as required by Rule 13a-15(b) and 15d-15(b) under the Securities Exchange Act of 1934 (the "Exchange Act") as of June 30, 2012. Our disclosure controls and procedures are designed to reasonably assure that information required to be disclosed by us in reports we file or submit under the Exchange Act is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding disclosure and is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.

Our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective in providing such reasonable assurance.

*b) Changes in internal control over financial reporting.*

There have been no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act) during the fiscal quarter ended June 30, 2012 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

From the 9/30/12 10-Q filed on November 7, 2012:

**Item 4. Controls and Procedures.**

*a) Evaluation of disclosure controls and procedures*

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures, as required by Rule 13a-15(b) and 15d-15(b) under the Securities Exchange Act of 1934 (the "Exchange Act") as of September 30, 2012. Our disclosure controls and procedures are designed to reasonably assure that

information required to be disclosed by us in reports we file or submit under the Exchange Act is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding disclosure and is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.

Our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective in providing such reasonable assurance.

**b) Changes in internal control over financial reporting.**

There have been no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act) during the fiscal quarter ended September 30, 2012 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

28.    These statements simply were not true.   Indeed, on March 14, 2013, Great Lakes admitted that the Company suffered from "a material weakness in its internal control over financial reporting" during the relevant period and as a result its financial results for the second and third quarter of fiscal 2012 would be restated.   Great Lakes further admitted that due to accounting improprieties, certain pending change orders where client acceptance was not finalized were included as revenue in violation of Company policy.

29.    Defendants breached their fiduciary duties to the Company and its shareholders by implementing ineffective and materially deficient internal controls, which resulted in improper revenue recognition, the filing of materially false and misleading financial statements with the SEC, violations of SOX, and the dissemination of false information to its shareholders.

30.    Throughout the relevant period, the Company, under the control of the Individual Defendants, regularly made statements concerning the state and expectation of Great Lakes' finances and operations.   Because Defendants implemented inadequate and ineffective internal controls, Defendants reported false financial results and made false assurances concerning such

metrics. The Company's false financial results and Defendants' false assurances concerning the Company's operations and finances are presented below.

31. On August 7, 2012, Great Lakes issued a press release reporting on earnings for the second quarter of 2012. The Press Release stated in pertinent part the following:

> Chief Executive Officer Jonathan Berger said, "The dredging division performed well this quarter, after weather impacted results in the first quarter of 2012. Backlog remained at a high level, $455 million, at June 30, 2012, despite the slow domestic bidding during the second quarter. The demolition segment continues to perform on its projects in backlog. A large portion of the demolition backlog earned in the quarter relates to new management's focus on large complex projects with higher margins, such as bridge demolition and industrial, municipal and utility buildings."

> Mr. Berger added, "Adjusted EBITDA of $35.6 million for the first six months was in line with our internal expectations. With our current backlog and the projection of additional projects that we will win and perform this year, we feel we are well positioned to meet our Adjusted EBITDA guidance for 2012."

> Mr. Berger continued, "The last month has been very busy for us. Positive legislation was passed by Congress and signed into law by the President, bidding has been active in dredging and demolition and we announced we are building a new, world class hopper dredge. Great Lakes is well positioned to execute on our strategic plan of doubling the size of the Company in five years."

32. On November 6, 2012, Great Lakes issued a press release reporting on earnings for the third quarter of 2012. The Press Release stated in pertinent part the following:

> [Defendant Berger:] "After several strong quarters, the demolition segment's results were negatively impacted by cost overruns caused by weather and scope changes outside those allowed to be reimbursed under the contract. These impacts lowered the demolition gross margin by over 9% and were limited to the third quarter. On a positive note, the demolition segment was awarded a $3 million power plant project in North Carolina prior to quarter end and another $12 million industrial demolition project in Ohio in October. Management continues to focus on large complex projects with higher margins, such as bridge, industrial, municipal and utility demolition and remediation."

> Mr. William Steckel, Senior Vice President and Chief Financial Officer added, "Our management team is focused on delivering strong results in the upcoming fourth quarter. The third quarter reflects the negative impact of the shift of project execution into the fourth quarter. We have prepared our equipment and personnel for the project workload planned in the upcoming quarter. As planned, we have

experienced a significant increase in our working capital, and corresponding decrease in our cash this year. Two projects with the most significant investment are Wheatstone and the Scofield coastal restoration. Collectively we have invested nearly $40 million in these important projects that we expect to be monetized in 2013. We have a strong focus going forward on working capital management and generating positive cash flow."

**Defendants Acknowledge Great Lakes' Lack of Internal Controls and the Misstated Financial Statements**

33. On March 14, 2013, Great Lakes issued a press release announcing that the Company's previously-issued financial statements for the Second and Third Quarter of fiscal 2012 should no longer be relied upon. In addition, Great Lakes admitted that it expected to conclude that the Company had a "material weakness in its internal control over financial reporting," and that it would not be able to timely file its 2012 annual financial results with the SEC.

34. On that same day, Great Lakes filed a Notification of Late Filing on Form 12B-25 with the SEC. The Form 12B-25 provided in pertinent part the following:

Great Lakes Dredge & Dock Corporation (the "Company") is unable to timely file its Annual Report on Form 10-K for the year ended December 31, 2012 (the "Form 10-K") without unreasonable effort or expense due to the circumstances described below.

During the preparation of its year-end financial statements, the Company identified instances in its demolition segment where revenue was recognized in a manner not consistent with the Company's accounting policy. The Company's policy regarding pending change orders is to immediately recognize the costs but defer the recognition of the related revenue until the recovery is probable and collectability is reasonably assured. Certain pending change orders where client acceptance has not been finalized were included as revenue. After a review, the Company concluded 2012 second and third quarter demolition segment revenues were overstated by $3.9 million and $4.3 million, respectively. Due to the time expended on this review, the Company now requires additional time to finalize the presentation and review of its financial statements and will be unable to meet the filing deadline for its Annual Report on Form 10-K.

The Company has determined that there was a failure of internal controls to detect or prevent misstatements in the financial statements and that such misstatements are material to the Company's results of operations for the quarterly and year-to-date periods ended June 30, 2012 and September 30, 2012, but not to any prior interim or

annual period. Therefore, the Company will restate its condensed consolidated interim financial statements via the filing of amended Quarterly Reports on Form 10-Q for the periods ended June 30, 2012 and September 30, 2012 prior to filing its annual audited financial statements with the Form 10-K. These amended Quarterly Reports will reflect the conclusion regarding 2012 second and third quarter demolition segment revenues described above and will also include adjustments to dredging operating income to record $1.3 million and $0.9 million of expenses previously capitalized and incurred in the preparation of vessels for the Wheatstone Australia LNG project.

Management's review and assessment of the Company's disclosure controls and procedures and management's evaluation of the Company's internal control over financial reporting, which is ongoing, has identified a material weakness. A "material weakness" is a deficiency, or a combination of significant deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis.

Management is in the process of completing the year-end and restated interim financial statements and assessing matters relating to the effectiveness of the Company's internal control over financial reporting. Management is also in the process of determining the steps necessary to remediate any material weakness, and recommending to the Audit Committee of the Company's Board of Directors the corrective actions that the Company could take in connection with the remediation efforts.

35. Contrary to Defendants' previous assurances regarding the reliability of the Company's internal control over financial reporting, the Company was forced to acknowledge that it had identified a "material weakness" in the procedures resulting in the overstatement of revenues by millions of dollars. Accordingly, the Company announced that it would be required to restate its reported revenues for the second and third quarter of 2012. On this news, the price of the Company's common stock plummeted from a close of $8.97 per share on March 14, 2013 to a $7.35 per share on March 15, 2013, a decline of 18% on unusually heavy trading volume.

36. On March 19, 2013 the Company reported that it was not in compliance with one of its financial covenants under its senior revolving credit facility, dated as of June 4, 2012. The Company further stated that it was in default under its credit agreement and the international letter of credit facility. The Company further stated that the outstanding obligations under the credit

agreement would now be secured by liens on certain of the Company's vessels and all of its domestic accounts receivable.

37.     The Individual Defendants breached their fiduciary duties by: (1) causing the Company to disseminate false and misleading financial statements; (2) causing Great Lakes to make false representations and omit key information regarding the Company's accounting practices; (3) instituting inadequate internal controls to detect and prevent misstatements in its financial statements; (4) causing Great Lakes to make false and misleading statements regarding the strength of its internal controls; (5) causing Great Lakes to default on one of its senior credit facility requiring it to secure such credit with its accounts receivable and liens on the Company's vessels; and (6) causing Great Lakes to lose tens of millions of dollars shareholder equity through its failure to properly report the Company's finances in violation of GAAP, and thereby substantially raise the Company's cost of raising capital.

38.     In addition, as a result of the Defendants' breaches of fiduciary duty, the Company will be forced to expend considerable amounts of time and money defending itself and its officers and directors against the recently filed class action lawsuit for securities fraud, has suffered great reputational harm in, and the substantial diminution of its goodwill.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

39.     By reason of their positions as officers, directors, and/or fiduciaries of Great Lakes and because of their ability to control the business and corporate affairs of Great Lakes, the Defendants owed the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Great Lakes in a fair, just, honest, and equitable manner.  The Defendants were and are required

to act in furtherance of the best interests of Great Lakes and its shareholders so as to benefit all shareholders equally, and not in furtherance of their personal interest or benefit.

40. Each director and officer of the Company owes to Great Lakes and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, finances, financial condition, as well as present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

41. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Great Lakes, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial, and directorial positions with Great Lakes, each of the Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of Great Lakes.

42. To discharge their duties, the officers and directors of Great Lakes were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Great Lakes were required to, among other things:

a)      ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

b)      conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c)      properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

d)      remain informed as to how Great Lakes conducted its operations, including how it conducted its clinical trials, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

e)      ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

43.    Each Individual Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their

obligations as directors and officers of Great Lakes, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

44. Each director and officer of the Company owed to Great Lakes the fiduciary duty to exercise due care and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of good faith and fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty not to advance their own personal, financial, or economic interests over, and at the expense of, the Company's public shareholders, or to allow other Great Lakes directors, officers, and/or employees to do so.

45. The Individual Defendants breached their duties of loyalty and good faith by causing the Company to misrepresent its financial results as well as the strength of its internal controls as detailed *infra*. The Individual Defendants' actions have also resulted in millions of dollars in losses of shareholder equity and subjected the Company to the costs of defending and the potential liability from a class action lawsuit for violations of the federal securities laws. As a result, Great Lakes has expended, and will continue to expend, significant sums of money and its corporate image and goodwill have been irreparably damaged.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

46. In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the

wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

47. The Individual Defendants collectively and individually initiated a course of conduct that was designed to and did, or as a result of their reckless or grossly negligent behavior did: (1) conceal the fact that the Company was improperly accounting for revenues and misstating its financial results; (2) maintain the Individual Defendants' executive and directorial positions at Great Lakes and the profits, power, and prestige that the Individual Defendants enjoyed as a result of these positions; and (3) deceive the investing public, including shareholders of Great Lakes, regarding the Individual Defendants' management of Great Lakes' operations, the Company's financial health and stability, and future business prospects.

48. The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct, pursuant to which they caused the Company to conceal the fact that Great Lakes was misrepresenting its financial results and engaging in accounting improprieties and that the Individual Defendants had breached their fiduciary duties in managing the affairs of the Company. The Individual Defendants also made other specific, improper statements about the strength of Great Lakes' internal controls as alleged herein. Further, the Individual Defendants took actions that were not the product of valid business judgment, but rather, the result of a desire to obtain personal profits and perquisites.

49. The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

50. The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or with gross negligence misrepresent its business prospects and release improper statements, taking actions that were not the product of valid business judgment and failing to properly manage the affairs of the Company. Because the actions described herein occurred under the authority of the Board and/or the Company's officers, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

51. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

52. The Individual Defendants owed to Great Lakes a duty to insure that the Company's financial reporting and disclosures fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Individual Defendants to know and understand the material, non-public information to be either disclosed or omitted from the Company's public statements.

## DERIVATIVE AND DEMAND FUTILITY
## ALLEGATIONS FOR THE BOARD OF GREAT LAKES

53. Plaintiff will adequately and fairly represent the interests of Great Lakes and its shareholders in enforcing and prosecuting its rights.

54.    Plaintiff brings this action derivatively in the right and for the benefit of Great Lakes to redress injuries suffered and to be suffered by Great Lakes because of the breaches of fiduciary duty by the Defendants.

55.    Because of the facts set forth herein, Plaintiff has not made a demand on the Board of Directors of Great Lakes to institute this action against the Individual Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

56.    The Great Lakes Board is currently comprised of the following seven (7) Individual Defendants – Leight, Mackie, Albert, Berger, Deutsch, Weiss, and Bittel.  Thus, Plaintiff is required to show that a majority of the Individual Defendants, *i.e.,* four, cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

57.    The Individual Defendants face a substantial likelihood of liability in this action because they caused Great Lakes to issue false and misleading statements concerning the company's improper recognition of revenue.  Because of their advisory, executive, managerial, and directorial positions with Great Lakes, each of the Individual Defendants had knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the highest levels.

58.    The Individual Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation, proximately causing millions of dollars of losses for Great Lakes shareholders.

59.    The Individual Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously

prosecute this action. For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiff has not made (and is excused from making) a pre-filing demand on the board to initiate this action because making a demand would be a futile and useless act.

60. Any suit by the Board of Directors to remedy these wrongs would likely expose the Individual Defendants and the Company to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants; thus, the board members are hopelessly conflicted in making any supposedly independent determination about whether to sue themselves.

61. Each of the Individual Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein, and are therefore not disinterested parties.

62. Each of the Individual Defendants authorized and/or permitted the Company to make false statements that were disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

63. Specifically, as alleged above, Defendant Berger and the Company operating under the control of the Individual Defendants made a number of false and misleading statements in Company filings with the SEC as well as statements to analysts and the public concerning the Company's financial results.

**The Audit Committee Is Not Independent**

64.    Demand is also futile with respect to those Defendants who are members of the Audit Committee.  The Individual Defendant members of the Audit Committee, Leight, Albert, Deutsch and Bittel, knew, or recklessly disregarded their duties to the Company by causing the Company to engage in improper revenue recognition in the Second and Third Quarters of 2012.   The Audit Committee Charter states:

**Purpose**

The Audit Committee's primary duties and responsibilities shall be:

- To monitor the integrity of the Company's financial reporting process and systems of internal controls regarding finance, accounting and legal compliance.
- To monitor the independence and performance of the Company's independent auditor and monitor the performance of the Company's internal audit function.
- To hire and fire the Company's auditor and approve any non-audit work performed by the Company.
- To provide an avenue of communication among the independent auditor, management and the Board.

65.    The duties and responsibilities of the Individual Defendant members of the Audit Committee include:

- Review the Company's annual audited financial statements and quarterly financial statements prior to filing with the SEC or distribution to stockholders and the public. Review should include discussion with management and the independent auditor of significant issues regarding accounting principles, practices and judgments.
- Discuss earnings press releases generally, including the use of "pro forma" or "adjusted" non-GAAP presentations, as well as financial information and earnings guidance provided to analysts and ratings agencies.
- Review analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements.
- Consider and review with management, the internal audit group and the independent auditor the effectiveness or weakness on the Company's internal controls. Develop in consultation with management a timetable for implementing recommendations to correct identified weaknesses.

- Request and receive reports on the design and implementation of internal controls. Review major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of material control deficiencies.
- To monitor the integrity of the Company's financial reporting process and systems of internal controls regarding finance, accounting and legal compliance.

66. The Individual Defendant members of the Audit Committee breached their fiduciary duties to the Company by failing perform their designated duties and responsibilities as described in the Audit Committee Charter by causing and allowing the Company to issue false and misleading financial statements in violation of GAAP, failing to institute or maintain proper internal controls, failing to identify, detect and prevent material misstatements in the Company's financial statements in the Second and Third Quarters of 2012, failing to identify, detect and prevent the Company from overstating segment revenues by $3.9 million and $4.3 million in those quarters, and by failing to properly identify, detect and prevent the material weaknesses in the Company's financial reporting process. Thus, Individual Defendant Audit Committee Members, Defendants Leight, Albert, Deutsch and Bittel cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action, thereby rendering a pre-filing demand on the Audit Committee member of the Board a futile and useless act.

67. Because of their participation in the gross dereliction of fiduciary duties and breaches of the duties of due care, good faith, and loyalty, the Individual Defendants are unable to comply with their fiduciary duties and prosecute this action. Each of them is in a position of irreconcilable conflict of interest in terms of the prosecution of this action and defending the Company in the securities fraud class action lawsuits brought under the Securities Exchange Act of 1934, because Defendants Berger and Company officers are named as defendants in that action.

68. Additionally, each of the Individual Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of Great Lakes.

**The Individual Defendants Are Not Independent**

69. In addition to the foregoing, each Individual Defendant, as a member of the Board, is incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action because the foregoing facts, along with the following facts, taken collectively, demonstrate that they each have conflicts of interest and face a substantial likelihood of liability.

70. Defendant Leight is not disinterested or independent, and therefore, is incapable of considering demand because:

- Leight has served as a director since 2006;

- Leight has served as Chairman of the Board since March 2011;

- Leight is a member of the Audit Committee and is incapable of considering a demand for the reasons set forth above;

- Leight served as a member of the Board of Directors of Aldabra Acquisition Corporation from Aldabra's inception in 2004 until the completion of the Aldabra merger with Great Lakes. He served on the Aldabra board alongside Defendants Berger, Deutsch, and Weiss;

- Leight has served as a member of the Board of Directors of Boise Inc. since 2007, serving alongside Defendants Albert, Berger, and Weiss; and

- Leight is the cousin of Defendant Berger.

71. Defendant Mackie is not disinterested or independent, and therefore, is incapable of considering demand because:

- Mackie has served as a director since 1995;

- Mackie served as Great Lakes' President and Chief Executive Officer from 1995 until September 2010;

- Mackie began his employment at Great Lakes in 1978 as Corporate Counsel, before becoming a Senior Vice President in 1987;

- Mackie served as a consultant to the Company from September 2010 until September 2011; and

- Mackie's daughter is Kathleen M. Lavoy, Great Lakes' Chief Legal Officer, Chief Compliance Officer, and Secretary.

72. Defendant Albert is not disinterested or independent, and therefore, is incapable of considering demand because:

- Albert has served as a director since July 2010;

- Albert is a member of the Audit Committee and is incapable of considering a demand for the reasons set forth above;

- Albert is a member of the Board of Directors of Boise, Inc., serving alongside defendants Leight, Berger, and Albert; and

- Albert is the Chairman of the Audit Committee, the committee charged with ensuring the accuracy of the Company's financial statements.

73. Defendant Berger is not disinterested or independent and, therefore, is incapable of considering demand because:

- Berger has served as a Director since 2006;

- Berger is currently a named defendant in the class action lawsuit for securities fraud;

- Berger made a number of false and misleading statements concerning the Company's financial reporting and internal controls, certified the Company's financial statements in compliance with GAAP, which were filed with the SEC, and also certified the Company's certifications under Section 302 of the Sarbanes Oxley Act of 2002;

- Berger served as a member of the Board of Directors of Aldabra Acquisition Corporation from Aldabra's inception in 2004 until the completion of the Aldabra merger with Great Lakes. He served on the Aldabra board alongside Defendants Leight, Deutsch, and Weiss;

- Berger has served as a member of the Board of Directors of Boise Inc. since 2007, serving alongside Defendants Leight, Albert, and Weiss; and

- Berger is the cousin of Defendant Leight.

74. Defendant Deutsch is not disinterested or independent and, therefore, is incapable of considering demand because:

- Deutsch has served as a director since 1996;

- Deutsch is a member of the Audit Committee and is incapable of considering a demand for the reasons set forth above; and

- Deutsch served as a member of the Board of Directors of Aldabra Acquisition Corporation from Aldabra's inception in 2004 until the completion of the Aldabra merger with Great Lakes. He served on the Aldabra board alongside Defendants Leight, Berger, and Weiss.

75. Defendant Weiss is not disinterested or independent and, therefore, is incapable of considering demand because:

- Weiss has served as a Director since 2006;

- Weise served as a member of the Board of Directors of Aldabra Acquisition Corporation from Aldabra's inception in 2004 until the completion of the Aldabra merger with Great Lakes. He served on the Aldabra board alongside Defendants Leight, Berger, and Deutsch; and

- Weiss has served as a member of the Board of Directors of Boise Inc. since 2007, serving alongside Defendants Leight, Albert, and Berger.

76. Defendant Bittel is not disinterested or independent and, therefore, is incapable of considering demand because:

- Bittel has served as a Director since 2011; and

- Bittel is a member of the Audit Committee and is incapable of considering a demand for the reasons set forth above.

77. Pursuant to their specific duties as Board members, each Individual Defendant was charged with management of the Company and to conduct its business affairs. Each of the above-referenced individuals breached the fiduciary duties that they owed to Great Lakes and its shareholders in that they failed to prevent and correct the misstatements and to institute sufficient internal controls. Thus, the Great Lakes board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their wrongful conduct that has exposed Great Lakes to hundreds of millions of dollars in potential liability for violations of applicable laws.

**Additional Likelihood of Substantial Liability of the Board of Directors**

78.     The Individual Defendants are exposed to substantial potential liability in this action because of their complete failure to prevent the Company from issuing false and misleading results concerning the Company's revenue recognition.

79.     It is the Company's policy that the information in its public communications, including SEC filings, be full, fair, accurate, timely, and understandable.  All employees, officers, consultants, and directors who are involved in the Company's disclosure process, including the Chief Executive Officer, Chief Financial Officer, and executive officers of the Company's subsidiaries, are responsible for acting in furtherance of this policy.  In particular, these individuals are required to maintain familiarity with the disclosure requirements applicable to the Company and are prohibited from knowingly misrepresenting, omitting, or causing others to misrepresent or omit, material facts about the Company to others, whether within or outside the Company, including the Company's independent auditors.  In addition, any employee, officer, consultant, or director who has a supervisory role in the Company's disclosure process has an obligation to perform his or her responsibilities diligently.

80.     The members of the Board of Directors knew, or were reckless in not knowing, of the wrongdoing and, nonetheless, did nothing to prevent it, stop it, or prosecute this action.  They have, therefore, ratified the wrongdoing alleged herein.

81.     Each Individual Defendant is bound by the Company's governance guidelines that clearly delineate the duties and responsibilities of the Board.  By failing to follow these corporate guidelines, the Board caused irreparable harm to the Company.

82.     The Individual Defendants reviewed, prepared or had access to the materially false and misleading press releases, SEC filings, and financial statements detailed herein.   All relevant

information regarding the Company's business prospects was provided to the Individual Defendants. It was the duty of the Individual Defendants to properly evaluate this information and provide thorough guidance and governance to the Company. Consequently, the Individual Defendants are exposed to a high likelihood of substantial liability in this action and are, therefore, incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action.

83. The Board Members of Great Lakes approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise these wrongs from Great Lakes shareholders or recklessly disregarded the wrongs complained of herein, and are therefore not disinterested parties. Each of the Individual Defendants exhibited a systematic failure to fulfill his fiduciary duties, which could not have been an exercise of good faith business judgment and amounted to gross negligence and/or extreme recklessness.

84. In order to bring this suit, the Board Members of Great Lakes would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

85. The acts complained of constitute violations of the fiduciary duties owed by Great Lakes' officers and directors and these acts are incapable of ratification.

86. Great Lakes has been, and will continue to be, subjected to lawsuits for the actions described herein, including securities fraud class action lawsuits, yet the Individual Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Great Lakes any part of the damages the Company has suffered and will continue to suffer.

87. The actions of the Board and the relationships between and among the Individual Defendants as described above has impaired the Board's ability to validly exercise its business judgment and has rendered it incapable of reaching an independent decision regarding the acceptance of Plaintiff's demands.

88. Any suit by the Great Lakes Board to remedy these wrongs would likely expose the Individual Defendants and Great Lakes to further violations of securities laws, which could result in additional civil actions being filed against one or more members of the Board. In light of this, the Individual Defendants are hopelessly conflicted in making any supposedly independent determination as to whether to sue themselves.

89. Great Lakes has already expended and will continue to expend significant sums of money because of the illegal and improper actions described above. Such expenditures will include, but are not limited to:

a) Costs incurred as a result of the Company's non-compliance with one of its covenants under its senior revolving credit facility and resulting default of its credit agreement;

b) costs incurred as a result of the Company's restatement of its revenues for the Second and Third Quarters of 2012;

c) costs incurred to carry out internal investigations, including legal fees paid to outside counsel and experts;

d) costs and legal fees for defending Great Lakes and certain individual Defendants against private securities class action litigation; and

e) costs associated with the late filing of the Company's Annual Report on Form 10-K.

90.     Plaintiff has not made any demand on the shareholders of Great Lakes to institute this action since demand on the shareholders would be a futile endeavor for the following reasons:

        a)      Great Lakes is a publicly held company with millions of shares outstanding, and thousands of shareholders;

        b)      making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders; and

        c)      making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

91.     Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

92.     The Individual Defendants owed and owe Great Lakes fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Great Lakes the highest obligation of good faith, fair dealing, loyalty, and due care.

93.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith, and supervision.

94.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the business prospects of the Company and failed to correct the Company's publicly reported financial guidance.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

95.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Great Lakes has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

96.    Plaintiff, on behalf of Great Lakes, has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief and judgment as follows:

A.    Against the Individual Defendants in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control and gross mismanagement;

B.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorney's fees, accountants' and experts' fees, costs, and expenses; and

C.    Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: April 2, 2013                    WEXLER WALLACE LLP

                                        /s/Dawn M. Goulet
                                        Kenneth A. Wexler
                                        Edward A. Wallace
                                        Mark R. Miller
                                        Dawn M. Goulet
                                        55 West Monroe Street, Suite 3300
                                        Chicago, IL 60603
                                        Tel: 312/346-2222
                                        Fax 312/346-0022

                                        SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
                                        Joseph P. Guglielmo
                                        Donald A. Broggi
                                        The Chrysler Building
                                        405 Lexington Avenue, 40th Floor
                                        New York, NY  10174-4099
                                        Tel:  212/223-6444
                                        Fax 212/223-6334

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
David R. Scott
156 South Main Street
Colchester, CT 06415
Tel: 860/537-5537
Fax: 860/537-4432

Attorneys for Plaintiff